UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YVONNE ARLEASE FOSTER, *et. al.*,

                                Plaintiffs,

v.

CHRIS PARALEXIS, *et al.*,

                              Defendants.
_____/

Case No. 2:18-11290
Honorable Mark A. Goldsmith
Magistrate Judge David R. Grand

**REPORT AND RECOMMENDATION TO GRANT DISPOSITIVE MOTIONS
FILED BY JUDGE KEVIN COX [31, 49]; THE CITY OF DETROIT [44]; THE CITY
OF WESTLAND AND OFFICER TROSPER [50]; THE CITY OF HAMTRAMCK [53];
NADINE HAMMOUD [69]; AND THE DEARBORN HEIGHTS DEFENDANTS [71],
AND TO DISMISS THE COMPLAINT**

    *Pro se* Plaintiffs Yvonne Arlease Foster ("Yvonne") and her daughter, Taesha Kionna

Foster ("Taesha") (collectively, "Plaintiffs"), commenced this action on April 15, 2018, against

twenty-seven named defendants and four unnamed "John and Jane Doe" defendants.  (ECF No.

1.)  In short, Plaintiffs allege a vast conspiracy among cities, police officers, judges, and attorneys

across Southeast Michigan to violate their constitutional rights.  (ECF No. 15.)  Now pending

before the Court are a slew of dispositive motions: two Motions for Summary Judgment filed by

Judge Kevin Cox[1]; four Motions to Dismiss filed by various other defendants; and a Motion for

Judgment on the Pleadings filed by the Dearborn Heights Defendants.[2]  (ECF Nos. 31, 49, 44, 50,

_____

[1] Plaintiffs named Judge David Cox in their Amended Complaint, but Yvonne Foster's state court
proceedings were actually in front on Judge Kevin Cox.  (*Compare* ECF Nos. 15, 16 *and* ECF
Nos. 31, 49.)  Judge Kevin Cox responded to the Complaint.  (*See id.*)

[2] The Dearborn Heights Defendants include:  The 20th District Court, the Dearborn Heights Police
Department, the City of Dearborn Heights, Officer Gene Derwick, Officer Christian Holder,
Officer John Keller, Officer A. Mazloum, Officer Chris Paralexis (who Plaintiffs sometimes
mistakenly refer to as "Alex" or Chris "Papalexis," Judge Mark Plawecki and Judge David Turfe.
(ECF No. 71.)

53, 69, 71.)  Plaintiffs filed responses to two of the Motions to Dismiss, as well as exhibits, a

"Declaration of Facts," and an Affidavit by Taesha Foster.  (ECF Nos. 72, 73, 77, 78, 79, 84.)  The

Dearborn Heights Defendants filed a reply.   (ECF No. 74.)   The case was referred to the

undersigned for all pretrial matters on July 19, 2019.  (ECF No. 26.)

For the following reasons, the Court **RECOMMENDS** that all of the moving Defendants'

dispositive motions **(ECF No. 31, 44, 49, 50, 53, 69, 71)** be **GRANTED**, that the claims against

the non-moving Defendants be **DISMISSED**, and that this case be **DISMISSED**.

## I.      REPORT

### A.      Factual Background

#### 1. *Hamtramck Traffic Stop*

This case arises from a traffic stop on August 22, 2017, in Hamtramck, Michigan.  (ECF

No. 15.)   That morning, Defendant Michael J. Fedenis, an officer of the Hamtramck Police

Department, was on uniformed patrol.  (ECF. No. 53, PageID.708; ECF No. 15, PageID.207.)  He

"observed a black motor vehicle, later determined to be a 2001 Pontiac Grand Prix, traveling in a

southerly direction on Dequindre at a rate above the posted speed limit of 25 mph."  (ECF No. 53,

PageID.708.)  Using his laser, Fedenis "confirmed the vehicle was travelling 38 mph."  (*Id*.)

Fedenis effectuated a traffic stop.  (*Id*.)  Plaintiff Yvonne Foster was driving the car.  (*Id*.

at PageID.708-09.)  Fedenis asked to see Yvonne's driver's license, and she refused.  (*See id*. at

PageID.708.)  Fedenis repeated his request, and each time Yvonne refused.  (*Id*. at PageID.708-

09.)  Yvonne finally gave Fedenis her license.  (*Id*. at PageID.709.)  Through the Law Enforcement

Information Network ("LEIN"), Fedenis confirmed Yvonne's identity and that did not maintain

valid insurance on the car.  (*Id*.)  Fedenis issued Yvonne a citation – Citation No. 17HM04177 –

for two civil infractions:  driving 11-15 mph over the speed limit and failing to maintain valid

insurance.  (ECF No. 53-2, PageID.727-30.)  In addition, the citation included one misdemeanor – obstructing a police officer in the discharge of his duties – related to her refusal to provide her license.  (*Id*.)  The citation indicated that if Yvonne wanted to contest the any of the infractions, including the misdemeanor charge, she was required to contact the 31st District Court of Michigan within fourteen days.  (*Id*.)  Under a heading entitled **"WARNING"**, Yvonne was advised that her failure to answer the misdemeanor charge would result in the issuance of a warrant for her arrest. (*Id.* at PageID.729).

Yvonne did not contact the Court within fourteen days.  (ECF No. 53-4, PageID.735-38.) Instead, on January 29, 2018, she sent a handwritten letter to 31st District Court Judge Alexis G. Krot, explaining that she was "homeless" and living in her car, and asking that the charges be dismissed.  (*Id*.)  She also wrote that on September 14, 2017 (which was beyond the 14-day deadline provided in the citation), she had mailed a response to the charges to the "City Clerk," and then had "forgot about the ticket."  (*Id.*).  Judge Krot responded about two weeks later advising Yvonne to "come in voluntarily to avoid future arrest."  (ECF No. 53-5, PageID.740.)  A review of the docket from the 31st District Court case, *Hamtramck v. Foster*, No. 1701132OM, indicates that Yvonne never appeared to answer the charges against her.  (ECF No. 53-3, PageID.732.)  It appears that the 31st District Court entered default judgments against Yvonne as to the charges, and denied Yvonne's request to set the defaults aside.  (ECF No. 69, PageId.827.)

### 2.    *Dearborn Heights Traffic Stop*

A Dearborn Heights Police Officer stopped Yvonne again on November 22, 2017.  (ECF. No. 71, PageID.876; ECF No. 71-1, PageID.903-10; ECF No. 15, PageID.209.)  This time she was travelling with her daughter, Taesha Foster.  (*Id*.)  Defendant Officers Derwick and Paralexis pulled Yvonne over because her headlight was out.  (*Id*.)  Despite following Yvonne with their

emergency lights on, she did not pull over until she was in front of Taesha's home.  (*Id.*)  Again, Yvonne refused to provide her driver's license.  (*Id.*)

Officer Derwick provided the following narrative in his case report on the incident:

Officer Papalexis[3] [sic] walked up to the driver and requester [sic] her drivers [sic] license.  The driver failed to produce her license, and attempted to argue with Officer Papalexis.  The driver wanted to know why she was stopped.  Officer Papalexis advised her he will let her know after she identifies herself.  The driver continued to be argumentative and refused to produce her license.  After several minutes, Officer Papalexis advised the driver that she had a headlight out and that she failed to signal her turn.  The driver continued to be argumentative and refused to produce her license.  After several failed attempts to obtain the drivers license, she was advised that unless she produces a license, she will be placed under arrest for obstruction.  The driver failed to produce her license and was advised that she is under arrest for obstruction of justice.[4]

Officer Papalexis opened the drivers [sic] door and advised her to step out of her vehicle.  The driver refused.  After several orders, Officer Papalexis grabbed a hold of the drivers [sic] left arm in an attempt to escort her out.  The driver leaned back into the vehicle and started yelling at Officer Papalexis.  Officers continued to order the driver out of her vehicle and she failed to do so.  At one point, the driver scooted out of her seat and was partially out of the vehicle when she sat back into the vehicle and leaned inside to resist Officer Papalexis.

During Officers [sic] encounter with the driver, the front seated passenger was video recording the traffic stop using her cellular telephone.  Prior to the driver exiting the vehicle, the passenger, later identified as Taesha Foster, exited the vehicle, grabbed the car keys and walked around the vehicle and behind Officer Papalexis.  R/O Derwick walked over and advised Taesha not to interfere and advised her to go onto the sidewalk.  Taesha started yelling at R/O, accusing him of assaulting her.  Taesha was advised not to interfere and to leave the traffic stop area or she would be arrested.  Taesha continued to use vulgarities towards Officers and walked to the sidewalk area.  Other Officers arrived to assist.  A neighbor came down and advised responding Officers that she observed the entire traffic stop and that she has it on her home video.  The neighbor advised that the driver and her passenger were the ones being disorderly.  Once she heard

---

[3] Officer Derwick incorrectly refers to Officer Paralexis as Papalexis in this report.

[4] Foster admits in her amended complaint that she refused to provide her driver's license during this interaction.  (ECF No. 15, PageID.209).

what the neighbor advised, Taesha then walked into her home and closed the door.  Cpl. Herr has the neighbors [sic] information and added it to his supplemental report reference Taesha abusing 911 [by making multiple unnecessary calls during the incident].

(ECF No. 71-1, PageID.907-08.)

The officers ultimately transported Yvonne to jail, where she refused fingerprinting and a booking photo.  (*Id*. at PageID.908.)  In her amended complaint, Yvonne states that her "personal property was searched and seized in front of her home."  (*See* ECF No. 15, PageID.212.)  She also alleges that booking officer Defendant Christian Holder denied her "the opportunity to write a habeas corpus upon arrest" by denying her a pencil and paper.  (ECF No. 15, PageID.214.)  Additionally, Yvonne alleges that Sergeant John Keller "verbally assaulted" her for asserting her Fifth Amendment Right to remain silent.  (*Id*.)  She also asserts that both Defendants Keller and Holder violated her Eighth Amendment right against cruel and unusual punishment by denying her access to her "blood pressure stabilizing medications and herbal throat drops."  (*Id*.)  After approximately two days, the Dearborn Heights Police Department released her.  (*Id*.)  Yvonne was charged with obstructing an officer, possession of marijuana, and possession of a deadly weapon (a knife concealed in a lipstick case).  (*Id*. at PageID.216; ECF No. 71-1, PageID.906, 908.)

Officer Mazloum issued Taesha Foster a citation for beach of the peace and misuse of the emergency 911 system due to the multiple emergency calls she made during Yvonne's arrest. (ECF No. 71-2, PageID.915; ECF No. 15, PageID. 212-13.)

### 3.    *City of Taylor Traffic Stop*

On January 9, 2018, City of Taylor Officer Matthew Minard stopped Yvonne for speeding. (ECF No. 15, PageID.217.)  Yvonne alleges that Officer Minard "pulled [her] from her vehicle, pushed up against her vehicle, pressing his body into her back and [] applied the cuffs tightly." (*Id*.)  Yvonne claims that she said, "please don't manhandle me."  (*Id*.)  She claims that Minard

responded, stating, "well instead of following my orders, you are talking on your phone and rolling up your window." (*Id*.) She also claims her "personal property was seized and impounded." (*Id*.) Due to her outstanding warrant, Officer Minard arrested Yvonne. (*Id*.)

After being transported to jail, Yvonne claims that "Booking Officer 'John Doe'" provided her "with old expired food that could have given her food poisoning." (*Id*. at 218.) Yvonne told the unnamed booking officer about her high blood pressure, and her need for her medication. (*Id*.) Later that day, a booking officer called an EMT unit to check Yvonne's blood pressure. (*Id*.) The EMT unit transported her to the emergency room. (*Id*.) The ER staff monitored Yvonne's blood pressure and eventually released her. (*Id*. at 218-19.)

### 4. *Sheriff Wojiechovski's Traffic Stop*

On January 12, 2018, Defendant Wayne County Sheriff John Wojiechovski stopped Yvonne for running a red light, though she contends it was "yellow" when she passed under it and that stopping would have been dangerous due to the icy roads. (*Id*. at 219.) Due to the warrant that had been issued by the 20th District Court, Officer Wojiechovski transported Yvonne to the Dearborn Heights Police Department ("DHPD"). (*Id*. at 219-220.) She asked to be medically evaluated immediately upon arrival. (ECF No. 15, PageID.219.) DHPD allegedly denied this request. (*Id*.) According to her amended complaint, Yvonne then called her daughter on January 13, 2018 to inform her that she was arrested and not receiving her medication. (*Id*. at PageID.222.) An officer listening to the call offered to call an EMT unit to check her blood pressure. (*Id*.) Yvonne accepted this offer and her blood pressure was allegedly 158/92, but since she was "asymptomatic," she elected not to have the EMT transport her to the ER. (*Id*.) According to her own complaint, the DHPD called her daughter twice during this custody, and later sent squad cars to her house in an attempt to get her medications. (*Id*.) Lastly, the DHPD called the EMT unit to

evaluate her again on January 14, 2018. (*Id*. at PageID.223.) At that time, her blood pressure was at 170/100 so the EMT took her to the ER, where she was evaluated and returned to custody. (*Id*.)

On January 16, 2018, in *State of Michigan v. Yvonne Arlease Foster*, Case No. C038817, Judge Mark J. Plawecki of the 20th District Court arraigned Yvonne on charges of obstructing a police officer. (ECF No. 69-1, PageID.856.) On January 24, 2018, Defendant Wayne County Assistant Prosecuting Attorney Nadine Hammoud attended Foster's Probable Cause Conference in the 20th District Court. (ECF No. 69, PageID.837.) On January 31, 2018, Judge David D. Turfe held a Probable Cause Exam.[5] (ECF No. 69-1, PageID.856.) Foster failed to appear; thus, the case was bound over to Wayne County Circuit Court. (I*d*.) Defendant Wayne County Circuit Court Judge Kevin Cox appointed attorney Defendant Catherine O'Meara to represent Foster. (ECF No. 31, PageID.414.) On February 16, 2018, Foster appeared before Judge Cox and asked that attorney O'Meara be removed from her case. (*Id*.; ECF No. 15, PageID.233.) Judge Cox denied the request and set the case for trial. (ECF No. 15, PageID.233-34.)

> 5. *City of Westland Traffic Stop*

On January 25, 2018, Defendant Officer D. Trosper of the City of Westland stopped Yvonne and issued her a citation for driving with a suspended license. (ECF No. 15, PageID.227.) Ticket number 18WE01366 is pending before the 18th District Court in *City of Westland v. Yvonne Arlease Foster*. (ECF Nos. 50-3 and 50-4.)

**B.     Procedural Background**

On August 6, 2018, the Honorable Mark A. Goldsmith dismissed Plaintiffs' complaint

---

[5] Yvonne claims that on "1/30/2018, Defendant Turfe ruled in favor of Garner Management Company who had violated the lease agreement and refused to do necessary repairs (to make the home "liveable" [sic] and safe to occupy) on a rental home." (ECF No. 15, PageID.229.) She fails to explain any particular relevance of this civil case to her criminal proceedings.

pursuant to Federal Rule of Civil Procedure 12(h)(3). (ECF No. 8.) Plaintiffs eventually filed an amended complaint on April 29, 2019, alleging constitutional violations, human rights violations, assault and battery, conspiracy and defamation against: Dearborn Heights Police Officers Chris Paralexis, John Keller, A. Mazloum, Gene Derwick, and Christian Holder; Hamtramck Police Officer John Fedenis; Westland Police Officer D. Trosper; Taylor Police Officer Matthew Minard; State of Michigan Judges David Turfe, Kevin Cox, and Alexis G. Krot; Attorneys Nadine Hammoud and Catherine O'Meara; the Cities of Detroit, Hamtramck and Westland; Wojiechovski and John Doe and/or Jane Doe Booking Officer from Taylor, John and/or Jane Doe Booking Officer from Dearborn Heights, John and/or Jane Doe Supervisor on Duty in Taylor and John and/or Jane Doe Prosecutor.[6] (ECF No. 15.) On May 16, 2019, Judge Goldsmith reopened the case and granted Plaintiffs' application to proceed without prepaying fees or costs. (ECF No. 19.)

Dispositive motions started flowing in. Judge Kevin Cox filed Motions for Summary Judgment on September 13, 2019 and October 8, 2019, alleging governmental immunity. (ECF Nos. 31, 44.) The City of Detroit filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs' amended complaint fails to name any defendants over which the City has control. (ECF No. 44.) The City of Westland and Officer Trosper filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), alleging Plaintiffs cannot state a claim under criminal and human rights statutes or MCL § 750.217c regarding impersonating an officer. (ECF No. 50.) The City of Hamtramck and Officer Fedenis (the "Hamtramck Defendants") filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiffs' claims are barred by the *Rooker-Feldman* and *Monell* doctrines.

---

[6] ECF No. 15 and ECF No. 16 were both filed on April 29, 2019. (ECF Nos. 15 and 16.) ECF No. 15 is the operative amended complaint because it is the same as ECF No. 16 with the exception of the addition of addresses for various defendants. (*Compare* ECF No. 15 *and* ECF No. 16.)

(ECF No. 53.)  Assistant Wayne County Prosecutor Nadine Hammoud filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and absolute immunity.  (ECF No. 69.)  The Dearborn Heights Defendants filed a Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c), arguing that Plaintiffs' claims are barred by the *Rooker-Feldman* Doctrine, sovereign immunity, qualified immunity, governmental immunity, and failure to state a cognizable state law claim.  (ECF No. 71.)  Officer Minard and Attorney O'Meara filed answers, but did not specifically join in any of the other Defendants' motions.  (ECF Nos. 48 and 82.)  The Plaintiffs never effectuated service on Defendant Wojiechovski, as the summons they attempted to serve on him was returned unexecuted.  (ECF No. 68.)

While the Court need not address all of the asserted grounds for dismissal, for the reasons discussed below, each of the moving Defendants' dispositive motions should be granted, and this case should be dismissed.

### C.    Legal Standards

#### 1.    *Motion for Summary Judgment*

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th

Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### 2. *Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1)*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges the Court's subject-matter jurisdiction. "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007); *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). A facial attack is a challenge to the sufficiency of the pleading itself. *Ritchie*,

15 F.3d at 598.  "On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party."  *Id.*  Under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction in order to survive the motion to dismiss.  *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

A factual attack, on the other hand, challenges the factual existence of the subject matter jurisdiction.  *See United States v. Ritche*, 15 F.3d 592, 598 (6th Cir. 1994).  "On such a motion, no presumption of truthfulness applies to the factual allegations . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *See id.*

3.     *Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true.  *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94

11

(2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When a court is presented with a Rule 12(b)(6) motion testing the sufficiency of a complaint, "it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

> 4. *Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c)*

A motion under Fed. R. Civ. P. 12(c) "tests whether a cognizable claim has been pleaded in the complaint." *See Shield v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). The motion "will be granted if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." *See Riverview Health*

12

*Inst. LLC v. Medical Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). It is reviewed under the same standard as motions under Fed. R. Civ. P. 12(b)(6). *See Vickers v. Fairfield Medical Center*, 453 F.3d 757, 761 (6th Cir. 2006).

> ### 5. *28 U.S.C. § 1915(e)(2)*

Under the *in forma pauperis* statute, a court must "dismiss the case at any time if the court determines that … the action or appeal … fails to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii). This "provision is applicable throughout the entire litigation process, and [a] case that may not initially appear to meet § 1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section." *Coleman v. Gullet*, No. 12-10099, 2012 WL 5986779, at *9 (E.D. Mich. Sept. 4, 2012) (internal quotations omitted). Fed. R. Civ. P. 12(b)(6) standards govern dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). *Id*. Further, "[a] court may grant a motion to dismiss even as to non-moving defendants where the non-moving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related." *Varner v. Smith*, No. 1315070, 2015 WL 1530441, at *12 (E.D. Mich. Mar. 31, 2015) (quoting *Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993)). A court dismissing a plaintiff's claims against moving defendants may sua sponte dismiss non-moving defendants as well where "it is clear that the same ruling would inevitably apply to each of the defendants." *Rose v. Arkansas Valley Envtl. & Utility Auth.*, 562 F. Supp. 1180, 1189 n. 11 (W.D. Mo. 1983).

> ### D. Analysis
>
> > #### 1. *Plaintiff Yvonne Foster's Claims Arising out of her State Court Cases Should be Dismissed Because this Court Lacks Subject Matter Jurisdiction under the Rooker-Feldman Doctrine*

Within her complaint, Plaintiff Yvonne Foster purports to bring claims of various

constitutional violations (Fourth, Fifth, Eighth, due process), civil conspiracy, violations of various criminal statutes, Human Rights violations, assault, and defamation.  (ECF No. 15.)  The Dearborn Heights Defendants, the Hamtramck Defendants, and Defendant Nadine Hammoud argue that these claims are barred because this Court lacks jurisdiction under the *Rooker-Feldman* doctrine. (ECF Nos. 53, 69, 71.)  The Dearborn Heights Defendants bring their motion pursuant to Federal Rule of Civil Procedure 12(c), whereas the Hamtramck Defendants and Hammoud bring their motions pursuant to Federal Rule of Civil Procedure 12(b)(1).  Regardless of the procedural rule applied, Plaintiffs' claims should be dismissed.

The *Rooker-Feldman* doctrine is a jurisdictional bar that prohibits a federal district court from engaging in appellate review of state court judgments.  *See Rooker v. Fid. Trust. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  The doctrine applies not only to final state court orders and judgments, but to interlocutory orders and non-final judgments issued by a state court as well.  *Doe & Assoc. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001).  The United States Supreme Court has clarified the scope of the *Rooker-Feldman* doctrine, holding that it is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  In other words, the *Rooker-Feldman* doctrine prohibits "a direct appeal from the final judgment of a state court."  *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003).

In light of *Exxon*, the Sixth Circuit has explained that the relevant inquiry in determining whether a claim falls within the scope of the *Rooker-Feldman* doctrine "is the source of the injury the plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th

Cir. 2006). "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.*

a.    *Hamtramck v. Foster, Case No. 1701132OM*

Plaintiff Yvonne Foster's claims arising out of *Hamtramck v. Foster*, State Court Case No. 1701132OM – the case against her in 31ˢᵗ District Court related to her August 22, 2017 traffic stop – are barred by the *Rooker-Feldman* doctrine. As discussed above, Yvonne failed to timely contest the civil infractions and misdemeanor charge, and, as a result, Judge Alexis Krot entered a default judgment against her and issued a warrant for her arrest. (ECF Nos. 53-3; 53-5, PageID.740; 69, PageID827.) Judge Krot also denied Yvonne's written request that her misdemeanor and/or civil infractions be dismissed. (*See id.*) Yvonne's federal complaint against the Hamtramck Defendants, the 31st District Court, and Judge Alexis Krot alleges several claims arising out of that state court case and Judge Krot's adverse decisions. (ECF No. 15, PageID.207-209.) While Yvonne may disagree that a default judgment was warranted, she does not dispute that one was entered against her. Indeed, she asks this Court to issue injunctive relief dismissing the very same fees, warrants and charges that Judge Krot refused to dismiss. (ECF No. 15, PageID.239.)

The *Rooker-Feldman* doctrine bars those claims. Yvonne was the "state court loser" in Case No. 1701132OM because a judgment was issued against her with respect to the civil infractions and misdemeanor charge. This Court lacks jurisdiction to review that judgment. Therefore, pursuant to Federal Rule of Civil Procedure 12(b)(1), the motion to dismiss filed by the Hamtramck Defendants should be granted as to the claims seeking to undo the state court judgment.[7] Likewise, under 28 U.S.C. § 1915(e)(2), Yvonne's claims against the 31st District

---

[7] To the extent Yvonne alleges a § 1983 claim against Officer Fedenis, which would be an

15

Court, and Judge Krot (ECF No. 53-3, PageID.732) should be dismissed for the same reason. Moreover, Judge Krot is clearly entitled to absolute immunity as to Yvonne's claims against her because those claims relate to actions Judge Krot took in her capacity as a sitting judge performing judicial functions.[8]

        *b.     The State of Michigan v. Yvonne Arlease Foster, Case No. C038817*

Yvonne's claims arising out of *The State of Michigan v. Yvonne Arlease Foster*, State Court Case No. C038817 are also barred by *Rooker-Feldman*.  (ECF No. 69-1, PageID.856.)  Yvonne alleges a variety of claims arising out of her traffic stop on November 22, 2017 against the Dearborn Heights Defendants, the John Doe Dearborn Heights Police Supervisor, Prosecutor Hammoud, John and/or Jane Doe Prosecutor, Defense Attorney Catherine O'Meara, Judge Plawecki, Judge Turfe, and Judge Kevin Cox.  (ECF No. 15, PageID.209-17, 225-38.)  Judge Plawecki conducted Foster's arraignment and Judge Turfe held her preliminary exam.  (ECF No.

---

independent claim that is not barred by *Rooker-Feldman*, that claim is addressed in Section D.4, *infra*.  The same goes for Yvonne's independent § 1983 claims against the other Defendants.

[8] The doctrine of judicial immunity protects judges from suits seeking monetary damages based on judicial acts performed under proper jurisdiction. *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997); *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967).  The principle of independent judicial decision-making "is so important to our system of jurisprudence that judicial immunity even extends to allegations of judicial acts done incorrectly, maliciously or corruptly." *Christmas v. Macomb Cnty. Circuit Court*, No. 07-10840, 2008 WL 251995, at *6 (E.D. Mich. Jan. 30, 2008). Judicial immunity attaches so long as the act complained of was a judicial act (*i.e.*, a function normally performed by a judge while dealing with the parties in his judicial capacity) and was not taken in the absence of all jurisdiction. *See Pierson*, 386 U.S. at 553-55; *Stump*, 435 U.S. at 356-62.  The Federal Courts Improvement Act of 1996 ("FCIA"), Pub.L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (1996) extends the doctrine of judicial immunity to requests for injunctive relief. *Gilbert v. Ferry*, 401 F.3d 411, 414 n. 1 (6th Cir. 2005).  The FCIA amended 42 U.S.C. § 1983 to provide that, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  As a result of this amendment, 42 U.S.C. § 1983 "explicitly immunizes judicial officers against suits for injunctive relief." *Roth v. King*, 449 F.3d 1272, 1286 (D.C. Cir. 2006); accord *Gilbert*, 401 F.3d at 414 n. 1.

69-1, PageID.856.)  After Foster failed to appear for either of these court proceedings, her case

was bound over to the Circuit Court.  (*See id*; *see also*, ECF No. 77, PageID.1129.)  Hammoud

prosecuted the case and attorney Catherine O'Meara provided Foster's defense.  (*See id*.)  Foster

specifically asks this Court to issue injunctive relief dismissing the charges against her, as well as

the warrant for her arrest, and the fees that have been imposed against her arising out of this state

court case.  (ECF No. 15, PageID.239.)

Again, the *Rooker-Feldman* doctrine bars Yvonne's claims.  Essentially, Yvonne wants

this Court to determine the propriety of the charges against her in the state court case and the

consequences of her failure to address them.  Under *Rooker-Feldman*, this Court simply lacks

subject matter jurisdiction to do so.  *Doe & Assoc. Law Offices*, 252 F.3d at 1030.  Accordingly,

Yvonne's claims challenging those charges should be dismissed, and all of the following motions

should be granted: the Dearborn Heights Defendants' Motion for Judgment on the Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c) (ECF No. 71); Wayne County Assistant

Prosecutor Nadine Hammoud's Motion to Dismiss pursuant to Federal Rule of Civil Procedure

12(b)(1) (ECF No. 69); and Judge Kevin Cox's Motions for Summary Judgment (ECF No. 31 and

49).  Likewise, under 28 U.S.C. § 1915(e)(2), Foster's related claims against Catherine O'Meara,

any John Doe Defendants from the Dearborn Heights Police Department, John and/or Jane Doe

Prosecutor, and Officer Minard should be dismissed.  And, as with Judge Krot, Judge Plawecki,

Judge Turfe, and Judge Cox are absolutely immune from suit, as is prosecutor Hammoud.[9]

---

[9] As with judges, absolute immunity applies to prosecutors being sued under § 1983.  *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976).  "This protection arises in part from a 'concern that harassment by unfounded litigation would cause deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independent judgment by his public trust.'"  *Red Zone 12 LLC v. City of Columbus*, 758 F. App'x 508, 513 (6th Cir. 2019).  Prosecutors are entitled to absolute prosecutorial immunity for conduct that is an "integral part of the judicial process."  *Imbler*, 424 U.S. at 430.  Courts take a functional

c.   *City of Westland v. Yvonne Foster Arlease, Case No. 12WE01366*

Yvonne's claims arising out of *The City of Westland v. Yvonne Arlease Foster*, State Court Case No. 18E01366, are also barred by *Rooker-Feldman*. (ECF No. 50-4.)  In her amended complaint, Yvonne asserts various claims against Officer Trosper arising out of her traffic stop on January 25, 2018.  (ECF No. 15, PageID.227.)  In short, because Yvonne failed to appear to contest her ticket, the 18th District Court issued a warrant for her arrest, and Yvonne is now asking this Court to essentially terminate that state court action against her, as she asks this court to issue injunctive relief dismissing the fees, warrants and charges arising from the case.  (ECF No. 15, PageID.239.)  Again, this Court has no subject matter jurisdiction over such a request.  *Doe & Assoc. Law Offices*, 252 F.3d at 1030.  Therefore, the motion to dismiss filed by the City of Westland and Officer Trosper (ECF No. 50) should be granted.

2.   *Plaintiff Taesha Foster's Claims Arising out of Citation Number 17DH17555 Should be Dismissed Because the Court Lacks Subject Matter Jurisdiction under the Rooker-Feldman Doctrine*

Plaintiff Taesha Foster's claims arising out of citation number 17DH17555 for breach of peace and misuse of 911 are barred under the *Rooker-Feldman* doctrine.  (ECF No. 71-2.)  Taesha alleges several claims arising out of the traffic stop on November 22, 2017 against City of Dearborn Heights, the Dearborn Heights Police Department, Officer Gene Derwick and Officer A. Mazloum.  (ECF No. 15, PageID.212-13.)  A warrant issued for Taesha's arrest for this citation.

---

approach to determining what conduct is an integral part of the judicial process.  *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Rouse v. Stacy*, 478 F. App'x 945, 950 (6th Cir. 2012).  "The analytical key to prosecutorial immunity ... is advocacy—whether the actions in question are those of an advocate."  *Id.* at 798.  The "critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process."  *Id.*; *see also Red Zone*, 758 F. App'x at 513 ("The functional approach asks whether the conduct 'was undertaken in connection with one's duties in functioning as a prosecutor.'").

18

(ECF No. 15, PageID.213.)  As with her mother, Taesha asks for this Court to "[i]ssue injunctive relief dismissing fees, warrants and charges related to this matter."  (ECF No. 15, PageID.239.) Again, under *Rooker-Feldman*, this Court lacks subject matter jurisdiction over such a request. Therefore, the Dearborn Heights Defendants' motion for judgment on the pleadings should be granted.[10]  (ECF No. 71.)

> ### 3.    *Plaintiffs Fail to State a Claim Against the City of Detroit and the City of Westland*

Plaintiffs name the City of Detroit and the City of Westland as Defendants, but fail to even make mention of the two cities in their amended complaint.  (ECF No. 15.)  This violates Federal Rule of Civil Procedure 8(a), which required Plaintiffs to provide, at the very least, "a short and plain statement of the claim showing the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a). Similarly, the lack of any "factual matter" supporting a claim against either of the cities dooms Plaintiffs' claims.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  And, Plaintiffs do not so much as hint at any official policy, practice or custom of either city that could serve as the basis of a claim.  *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978).  Thus, the City of Detroit's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted and the City of Westland should be dismissed pursuant to 28 U.S.C. § 1915(e)(2).[11]

---

[10] Taesha alleges that she was "assaulted" by Officer Derwick.  (ECF No. 15, PageID.212-13.) However, Taesha's amended complaint contains no factual allegations whatsoever regarding an assault by Officer Derwick.  As such, her claim should be dismissed pursuant 28 U.S.C. §1915(e)(2) for failure to state a claim for relief.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Moreover, Taesha alleges that Derwick's conduct violated 18 U.S.C. § 113 (ECF No. 15, PageID.213), but that is a criminal statute that she has no right to enforce.  *Am. Postal Workers Union, ALF-CIO v. Indep. Postal Sys. Of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) (noting that "the general rule is that a private right of action is not maintainable under a criminal statute").

[11] Yvonne's separate claims against Officer Trosper, an officer of the City of Westland, are discussed below at Section D.4, *supra*.

4.       *Plaintiffs Fail to State a Claim Against Any of the Police Officers*

In light of the above analysis, Plaintiffs' only remaining claims are those they assert against the various defendant officers for civil conspiracy, assault and battery, defamation, and constitutional violations that do not directly challenge the propriety of the state court cases and rulings against them.[12]

The Court will first address the civil rights actions brought pursuant to 42 U.S.C. § 1983.[13] (ECF No. 15, PageID.207.)  Officers Derwick, Holder, Mazloum, and Paralexis assert that they are entitled to qualified immunity from Yvonne Foster's § 1983 claims.  (ECF No. 71, Page.ID.882-92.)  The doctrine of qualified immunity shields government officials "from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Once the qualified immunity

---

[12] Plaintiffs also bring various claims under criminal statutes and the Universal Declaration of Human Rights.  These claims should be dismissed because, plaintiffs may not assert a private cause of action for a violation of criminal statutes or the Universal Declaration of Human Rights.  *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004); *Am. Postal Workers Union,* , 481 F.2d 90, 93 (6th Cir. 1973).

Plaintiffs' claims under 6 C.F.R § 37.3 and M.C.L. § 750.217c should also be dismissed.  6 C.F.R § 37.3 provides only a definition of "Full Legal Name," and does not authorize a private right of action.  M.C.L. § 750.217c states that "a person shall not impersonate, falsely represent himself or herself as, or falsely act as a public officer or public employee and prepare, issue, serve, or otherwise act to further the operation of any legal process or unauthorized process that affects or purports to affect persons or property."  Plaintiffs fail to allege any facts showing the defendant officers were not, in fact, officers of their respective departments.  (*See* ECF No. 15.)

[13] Because Plaintiffs' "Prayer for Relief" requests an "investigation into corruption" by the alleged conspirators, her § 1983 claims arguably survive the *Rooker-Feldman* analysis.  *See Berry, supra*, at 299-300 (The *Rooker-Feldman* doctrine does not bar federal jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court.  Instead, the doctrine applies only where a state-court loser initiates an action in federal district court, complaining of injury caused by the state court judgment, and seeks review and rejection of that judgment.").

defense is raised, "the plaintiff must show that (1) the defendant violated a constitutional right; and (2) that right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016). A plaintiff must satisfy both prongs, but the Court may take up the questions in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Each defendant's liability "must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2019).

### a.   Fourth Amendment

### i.   Traffic Stops

Although her factual allegations are very unclear, reading her complaint in the light most favorable to her, Plaintiff Yvonne Foster appears to allege the following with regard to her various traffic stops:   1) Officer Fedenis violated her Fourth Amendment rights by stopping her for speeding (ECF No. 15, PageID.207-09); 2) Officers Derwick and Paralexis violated her Fourth Amendment rights by stopping her for a broken headlight and arresting her (*see id.* at PageID.209-15); 3) Officer Minard violated her Fourth Amendment rights by pulling her over for speeding and arresting her for driving with a suspended license (*see id.* at PageID.217); and 4) Officer Trosper violated her Fourth Amendment rights by pulling her over in violation of her purported "right to travel" under 18 U.S.C. § 245.  (*Id.* at PageID.227).[14]

---

[14] Plaintiff Yvonne Foster also claims that Sheriff Wojiechovski violated her Fourth Amendment and other rights by pulling her over, arresting her, and impounding her car. (*See id.* at PageID.219-20.)  All of these claims should be dismissed.  First, this case has been pending for almost two years, yet, in violation of Federal Rule of Civil Procedure 4(j), she still has not served Wojiechovski with her complaint.  Moreover, Yvonne does not dispute that a warrant for her arrest was outstanding, so Wojiechovski's taking her into custody and impounding her vehicle could not have violated her Fourth Amendment rights.  Finally, all of Yvonne's numerous other purported "claims" against Wojiechovski, are nothing more than conclusory assertions that he violated various federal laws, without providing any factual basis whatsoever.  (*Id.*, at PageID. 220) (alleging that Wojiechovski "violated 28 U.S.C. 1746. Unsworn Declarations Under Penalty of Perjury" and "violated 18 U.S.C. 1001 Statements or entries generally.").  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

"The Fourth Amendment safeguards '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *See U.S. v. Winters*, 782 F.3d 289, 295-96 (6th Cir. 2015)(*citing* U.S. CONST. amend. IV).   Stopping and detaining an automobile and its occupants constitutes "a 'seizure' within the meaning of [the Fourth Amendment], even though the purpose of the stop is limited and the resulting detention quite brief." *See id.* (*citing Delaware v. Prouse*, 440 U.S. 648, 653 (1979)).   Whether a particular traffic stop is constitutional is analyzed under the standards set forth in *Terry v. Ohio.   See Terry v. Ohio*, 392 U.S. 1 (1968).   Under this framework, the stop must be 1) "justified at its inception"; and 2) "reasonably related in scope to the circumstances which justified the interference in the first place." *See id.* at 20.   "If an officer develops reasonable and articulable suspicion of criminal activity during a stop, 'he may extend [the] traffic stop long enough to confirm or dispel his suspicions. Any such extension, though, must be limited in scope and duration.'" *See Winters, supra* at 296 (citation omitted).   "It is well-established that where an 'officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment." *See id.* (*citing United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996)).

The stop initiated by Officers Derwick and Paralexis was lawful.   Yvonne does not dispute that she was driving with a broken headlight.   (ECF No. 15, PageID.209.)   Driving at night without headlights provides sufficient probable cause to perform a traffic stop for violation of the Michigan Vehicle Code.   *See* M.C.L § 257.684(a) ("Every vehicle upon a highway within this state at any time from a half hour after sunset to a half hour before sunrise . . . shall display lighted lamps.").   Thus, Officer Derwick and Paralexis had probable cause to believe a traffic violation was occurring and are entitled to qualified immunity for the stop.   Their motion should be granted as to the stop.

22

(ECF No. 71.)

Officers Fedenis and Trosper do not address qualified immunity in their briefs.  (ECF No. 50, 53.)  Officer Minard raises it as an affirmative defense.  (ECF. No. 48.)  Regardless, the stops initiated by each of them were lawful.  There is no dispute that the traffic stop initiated by Officer Fedenis was lawful.  Officer Fedenis observed Yvonne driving 38 mph in a 25 mph zone.  (ECF No. 53, PageID.708.)  Speeding provides sufficient probable cause to perform a traffic stop for violation of the Michigan Vehicle Code.  *See* MCL § 257.627.  Although Yvonne seems to argue that Officer Fedenis should have used radar instead of a laser to determine her speed, she does not dispute the actual speed.  (ECF No. 15, PageID.207.)  Therefore, the initial stop was lawful.  As such, Officer Fedenis is entitled to qualified immunity for this stop, and should be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

Yvonne has no claim against Officer Trosper in connection with the January 25, 2018 traffic stop.  She alleges simply that Officer Trosper pulled her over in violation of her purported "right to travel" under 18 U.S.C. § 245, Federally Protected Activities.  (ECF No. 15, PageID.227.)  But Yvonne cannot assert a civil claim under this federal criminal statute.  Moreover, the statute specifically states, "Nothing in this section shall be construed as indicating an intent on the part of Congress to prevent any State . . . from exercising jurisdiction over any offense over which it would otherwise have jurisdiction . . ."  18 U.S.C. §245(a)(1).  Clearly, police officers of the State of Michigan and its municipalities have jurisdiction to enforce state traffic laws.  Accordingly, Officer Trosper did not violate any of Yvonne's rights, and her claims against him are barred by qualified immunity and should be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

The same is true for the traffic stop initiated by Officer Minard.  (ECF No. 15, Page.ID.217.)  Yvonne Foster does not dispute that she was speeding when Officer Minard pulled

23

her over.  (*See id.*)  She also does not dispute that she resisted giving her driver's license to Officer

Minard, thus lengthening the time of the stop.  (*See id.*)  Thus, at least as to the initial stop and

seizure – Yvonne does dispute the use of force by Officer Minard, which is addressed below –

Officer Minard is entitled to qualified immunity, and Foster's related claims against him should

be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

### ii.  Excessive Force

Yvonne Foster also seems to contend that Officers Paralexis and Minard used excessive

force when they arrested her.  (ECF No. 15, PageID.209-19.)  While such claims often raise factual

questions, here, Plaintiffs' own allegations doom their claims.  Specifically, with regard to Officer

Paralexis, Yvonne alleges that he "pull[ed] on her left wrist" and "pulled her from the car."  (ECF

No. 15, PageID.212.)  Regarding Officer Minard, Yvonne alleges he "pulled [her] from her

vehicle, pushed up against her vehicle, pressing his body into her back and [] applied the cuffs

tightly."  (ECF No. 15, at Page.ID217.)  Yvonne Foster said, "please don't manhandle me."  (*See

id.*)  Officer Minard allegedly responded, stating, "well instead of following my orders, you are

talking on your phone and rolling up your window."  (*See id.*)

Officer Paralexis argues his use of force was reasonable given Foster was "actively

resisting" arrest.  (ECF No. 71, PageID.885-887.)  The Court agrees.  "[T]he right to be free from

excessive use of force is a clearly established Fourth Amendment right."  *King v. United States*,

917 F.3d 409, 429 (6th Cir. 2019).  However, "[n]ot every push or shove, even if it may later seem

unnecessary . . . violates the Fourth Amendment."  *See Graham v. Connor*, 490 U.S. 386, 396

(1989).  To determine whether an excessive-force violation has occurred, courts apply "the

objective-reasonableness standard, which depends on the facts and circumstances of each case

viewed from the perspective of the reasonable officer on the scene and not with 20/20 hindsight."

*Vanderhoef v. Dixon*, 938 F.3d 271, 276 (6th Cir. 2019).  An analysis of whether an officer's use of force was reasonable is guided by the following three factors:  (1) severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the police officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight."  *Id.*

Officer Paralexis initially attempted to stop Yvonne for a broken headlight.  (ECF No. 15, PageID.209.)  However, it is undisputed that she did not pull over immediately, but rather drove to her daughter's house before pulling over.  (*Id.* at PageID.209-215.)  This initial non-compliance certainly would have caused the officer concern about how the driver might behave once she did stop.  And, even after finally pulling over, it is undisputed that Yvonne refused to produce her license upon request by Officer Paralexis.  (*Id.*)  Foster seems to claim that she was not required to produce her license, but she provides no valid legal support for such a claim.  (*Id.*)  Given Foster's failure to produce her license, Officer Paralexis placed Foster under arrest for obstruction of justice.  (*Id.*)  After several orders requesting Foster to vacate her vehicle, Officer Paralexis "grabbed hold of" Foster's left arm in an attempt to get her out of the vehicle.  (*Id*; *see also*, ECF No. 71-1, PageID.907-08.)  At that point, Yvonne Foster "leaned back into the vehicle and started yelling."  (*Id.*)  Foster does not dispute these facts in any of her filings.  (*Id.*)

Thus, Yvonne does not dispute that she was actively resisting arrest.  In addition, both Yvonne and Taesha were defensive in nature instead of cooperative.  (*Id.*)  In addition to Yvonne travelling several blocks after the officers attempted to stop her (*Id.*; *see also* ECF No. 15, PageID.209), and refusing to give the officers her license (*Id.*), Taesha does not dispute that after Yvonne finally stopped, she walked around Yvonne's car and behind Officer Paralexis, yelling at Officer Derwick and accusing him of assaulting her.  (*Id.*)  A neighbor also came to the scene. (*Id.*)  Given these circumstances, which were clearly escalating, Officer Paralexis's mere grabbing

of Yvonne Foster's arm to pull her out of her car was reasonable and did not violate the Fourth Amendment. *See Graham, supra* at 397.

The same is true of Yvonne's allegations against Officer Minard.  **Yvonne alleges that Officer Minard"** pulled [her] from her vehicle, pushed up against her vehicle, pressing his body into her back and [] applied the cuffs tightly."  (ECF No. 15, PageID.217.)  Yvonne Foster claims that she said, "please don't manhandle me."  (*See id*.)  She claims that Minard responded, stating, "well instead of following my orders, you are talking on your phone and rolling up your window." (*See id*.)  Yvonne also states that she "informed Defendant Matthew Minard that the handcuffs were on too tight.  Defendant Matthew Minard, stated that the cuffs were fine and refused to adjust them."  (*See id*.)  She also claims that when the handcuffs were removed, she had "indentations in her wrists where the cuffs were digging into her flesh."  (*See id*. at PageID.218.)

These facts, taken directly from Yvonne Foster's amended complaint, show that she was resisting arrest again.  (ECF No. 15, PageID.217-19.)  Yvonne does not dispute that instead of following Officer Minard's orders, she continued to talk on the phone and roll up her window. (*Id*.)  In light of the fact that Officer Minard pulled her over due to a suspended license and she actively resisted arrest, the initial use of force was reasonable and should not be second guessed by the Court. *See Graham, supra* at 397.

Moreover, Yvonne's allegations about the tightness of the handcuffs do not rise to the level necessary to meet the standard announced in *Baynes v. Cleland* for excessive force related to unduly tight or excessively forceful handcuffing, which requires the plaintiff to allege and prove: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing. *See Baynes v. Cleland*, 799 F. 3d 600, 608 (6th Cir. 2015).  While **Yvonne's allegations satisfy the**

first two elements of this standard, she fails to satisfy the third element because mere "indentations in her wrists" are not a "physical injury." *See id.* (excessive force claim allowed where plaintiff alleged he "could not feel his fingers because of the tightness of the handcuffs," and "still experiences periodic numbness"); *Morrison v. Bd. of Trs. Of Green Twp.* 583 F.3d 394, 402-03 (6th Cir. 2009) (claim allowed where plaintiff's skin was pinched and turning black and blue, and instigated an inquiry from a paramedic"); *Martin v. Heideman*, 106 F.3d 1308, 1310, 1312-13 (6th Cir. 1997) (claim allowed where plaintiff's hands became numb and swollen). Accordingly, Yvonne's excessive force claims related to the handcuffing should be dismissed. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### iii. Arrest

Yvonne Foster argues that her arrests were wrongful. (ECF No. 15.) The Dearborn Officers argue that they had probable cause for her arrest. (ECF No. 71, PageID.884-85.)

"In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). Probable cause to arrest exists if "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in believing . . . that the suspect has committed, is committing, or is about to commit an offense." *Steiger v. Hahn*, 718 F. App'x. 386, 390 (6th Cir. 2018)(citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Courts review this determination from "the perspective of a reasonable officer on the scene, rather than [one] with 20/20 vision of hindsight." *Id.* (quoting *Klein v. Long*, 275 F.3d 540, 544 (6th Cir. 2001)).

As the Dearborn Heights Defendants point out, a refusal to comply with a police officer's request for identification during the course of a *Terry* stop provides probable cause to arrest the individual for resisting and obstructing. *See Chesney v. City of Jackson*, 171 F.Supp.3d 605, 630

(6th Cir. 2016) ("[A] refusal to comply with a police officer's request for identification, without more, may provide probable cause to arrest the non-compliant individual for resisting and obstructing a police officer in the performance of his duties.").  As discussed above, *see supra* at Section I. D.4.a.i, both Officers Paralexis and Officer Minard had probable cause to arrest Yvonne. Thus, her wrongful arrest claims fail.

### iv.  Search and Seizure

Yvonne Foster complains that "her personal property was searched and seized [] in front of her home" during the November 2017 traffic stop, and that her vehicle was impounded and searched incident to that stop.  (ECF No. 15, PageID.212, 228.)  She also complains about a similar search and seizure during her January 2018 traffic stop by Officer Minard.  (ECF No. 15, PageID.217.)  The Dearborn Heights Defendants argue that their searches were lawful because they were incident to lawful arrest.  (ECF No. 71, PageId.887.)  The Court agrees.

An officer may search incident to a lawful arrest, "the person and the area within [her] immediate control" meaning "the area from which [she] might gain possession of a weapon or destructible evidence."  *See Arizona v. Gant*, 556 U.S. 332, 339 (2009).  In addition, after lawfully taking custody of a vehicle, officers may conduct a warrantless inventory search that "serve[s] to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger."  *See Colorado v. Bertine*, 479 U.S. 367, 372 (1987).

During the November 2017 traffic stop, Foster's personal property was searched and seized, but she admits this occurred only after she was arrested for obstructing an officer.  Thus, both the first search and the later search of her impounded vehicle were lawful.  *See Arizona, supra; Colorado, supra*.  As such, the Dearborn Heights Defendants' motion for judgment on the

pleadings should be granted as to these claims.

Similarly, with regard to the January 2018 traffic stop in Taylor, Yvonne's personal property was searched and seized only after Officer Minard arrested her on an outstanding warrant issued by the DHPD.  (ECF No. 15, PageID.217.)  Thus, both the first search and the later one of her impounded vehicle were lawful.  *See Arizona, supra; Colorado, supra*.  As such, Yvonne's claims against Officer Minard should be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

b.      *Eighth Amendment*

Plaintiff Yvonne Foster alleges that Defendant Officers Derwick, Holder, Keller and Paralexis violated her Eighth Amendment right to be free from cruel and unusual punishment by "refusing to provide her blood pressure stabilizing medications and herbal throat drops."  (ECF No. 15, PageID.214-15.)  She also claims that DHPD staff gave her an "expired deli sandwich" that could have given her food poisoning in violation of her Eighth Amendment rights.  (*See id*. at PageID.224.)  She also seems to claim that a John Doe Booking Officer for the City of Taylor violated her Eighth Amendment rights by providing her with expired food and disregarding her complaints of medical concerns and medical assessments.  (ECF No. 15, PageID.217-18.)

Because the issues about which Yvonne complains arose while she was a pretrial detainee, the Eighth Amendment's prohibition against cruel and unusual punishment does not apply; that constitutional Amendment only applies to persons who have been convicted of crimes.  *See Butler v. Jewell*, 869 F.2d 1488 (Table) (6th Cir. 1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).  However, the same protections afforded under the Eighth Amendment are available to pretrial detainees under the Fourteenth Amendment's Due Process Clause.  *See id.* (citing *Whitley v. Albers*, 475 U.S. 312 (1986)).  Thus, the Court construes Yvonne's claims as being brought under the Fourteenth Amendment.  The distinction matters little, however, as a pretrial detainee's

29

claim of cruel and unusual punishment under Fourteenth Amendment due process is substantially

the same as a convicted prisoner's claim under the Eight Amendment.   *See Miller v. Calhoun*

*Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005).

>    The Sixth Circuit has explained the standards that apply to such a claim as follows:

>> A claim of deliberate indifference under the Eighth Amendment has both
>> an objective and a subjective component.   The objective component
>> requires the existence of a sufficiently serious medical need.   To satisfy the
>> subjective component, the defendant must possess a "sufficiently culpable
>> state of mind," rising above negligence or even gross negligence and being
>> "tantamount to intent to punish."   Put another way, "[a] prison official acts
>> with deliberate indifference if he knows of a substantial risk to an inmate's
>> health, yet recklessly disregards the risk by failing to take reasonable
>> measures to abate it."   Mere negligence will not suffice.   Consequently,
>> allegations of medical malpractice or negligent diagnosis and treatment
>> generally fail to state an Eighth Amendment claim of cruel and unusual
>> punishment.

*Broyles v. Correctional Medical Servs., Inc.*, 478 F. Appx. 971, 975 (6th Cir. 2012) (internal
citations omitted).

>    A serious medical condition is "a condition of urgency, one that may produce death,

degeneration, or extreme pain."   *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2nd Cir. 1994).   "The

objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant

Eighth Amendment protection."   *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Rhodes v.*

*Chapman*, 452 U.S. 337, 349 (1981).   To satisfy this component, the conduct must deprive the

prisoner of "the minimal civilized measure of life's necessities."   *Rhodes*, 452 U.S. at 349.   The

objective component is responsive to "contemporary standards of decency."   *McMillian*, 503 U.S.

at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

>    With regard to this component, Yvonne argues that her serious medical need stems from

her high blood pressure.   (ECF No. 15 at PageID.219.)   Given the potential serious health

consequences associated with high blood pressure, and Yvonne's allegations that she was

transported to the ER for this condition while in custody, at a minimum, she has raised a genuine dispute of material fact as to the objective component.  (*See id*. at PageID.218-222.)[15]

However, Yvonne fails to state a claim as to the subjective component.  As stated above, a claim of deliberate indifference under the Eighth Amendment requires that the defendant kept an inmate in a situation that could credibly cause serious harm, and that the defendant knew about the risks and disregarded them.  *See Broyles, supra* at 975.  As the Sixth Circuit has recognized, the requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."  *See Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001).

Yvonne fails to show the requisite subjective intent on the part of any of the Dearborn Heights Defendants with regard to her Eighth Amendment claim.  Yvonne was in the custody of the Dearborn Heights Police Department on two occasions:  1) November 22, 2017 through November 25, 2017, subsequent to her arrest by Officer Paralexis (ECF No. 15, PageID.215-16); and 2) January 12, 2018 to January 16, 2018, subsequent to her arrest by Sherriff Wojciechowski (ECF No. 15, PageID.224).

With regard to her first custody, Yvonne states that she informed Officers Paralexis and Derwick "that she was having symptoms that her blood pressure was high and requested to have

---

[15] Yvonne's allegations about being denied herbal throat drops and being given expired food do not satisfy the objective component.  Yvonne alleges no facts from which one could conclude that she had a serious medical condition regarding her throat, and an herbal throat drop is a luxury, not medication.  Courts routinely find that allegations like Yvonne's about being served expired food do not implicate the Eighth Amendment.  *See Lewis v. Gupton*, No. 14-2808-JDT-DKV, 2015 WL 150343, at *3 (W.D. Tenn. Jan. 12, 2015) (collecting cases); *Jackson v. Aramark*, No. 3:17-CV-P322-DJH, 2017 WL 3176284, at *3 (W.D. Ky. July 26, 2017).  Moreover, Yvonne does not allege that she suffered any physical injury as a result of either issue.  *Id.*

her blood pressure checked and access to her blood pressure medication that she carried in her personal belongings."  (ECF No. 15, PageID.215.)  She also claims that she told "every officer who came by the cell that she took blood pressure medication twice daily."  (*Id.*)  According to her own complaint, however, officers called her daughter "frequently" in an attempt to get her to bring Yvonne's medication.  (*Id.* at PageID.222.)  Although she had to secure a ride from a neighbor, Taesha did eventually bring the medications to the station, and Yvonne does not contend that officers refused to provide the medications to her.  (*Id.*).

With regard to her second custody, Yvonne again asked to be medically evaluated upon arrival.  (*Id.* at PageID.219, 222.)  And again, Yvonne admits that the officers "frequently" contacted Taesha to ask her to bring Yvonne's medications.  (*Id.*, PageID.222).  According to her own complaint, when Taesha was unable to bring the medications, the DHPD sent a squad car to the residence in an attempt to get Yvonne's medications.  (*Id.*)  Moreover, an officer offered to call an EMT unit to check Yvonne's blood pressure.  (*Id.*)  An EMT did, in fact, arrive and Yvonne admits that her blood pressure was taken, and that she was "asymptomatic."  (*Id.*)  Thus, Yvonne agreed that she did *not* need to have the EMT transport her to the ER.  (*Id.*)  The next day, Yvonne again complained about her blood pressure, and although she claims an unidentified "Officer" debated her about her need to have her blood pressure checked, she admits that he "had the EMT come and check [her] blood pressure."  (*Id.* at PageID.223.)  In light of her blood pressure reading, Yvonne asked to be taken to see a physician, and she admits that she was "transported by EMT to the ER, where she was treated for high blood pressure, monitored and returned to the custody of DHPD."  (*Id.*, PageID.224.)

Given these facts, it is clear that efforts were made to ensure that Yvonne was monitored throughout her custody and that she received treatment for her high blood pressure.  When an

inmate receives some treatment for her serious medical issue, a violation of the Eighth Amendment only exists where the plaintiff shows care so grossly inadequate or incompetent so as to shock the conscious or be intolerable to fundamental fairness. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2005). Here, the actions by the officers simply do not rise to that level. The very recent case of *Washington v. John Doe*, Case No. 20-cv-10149, 2020 WL 833267 (E.D. Mich. February 20, 2020), is analogous and instructive on this point. In *Washington*, upon his booking, a pretrial detainee informed a nurse that he took daily blood pressure medication. Nevertheless, among many complaints, he claimed that he was not provided any medication for "at least [the first] two days" he was in custody. He was later provided medication, though he claimed it was not the correct kind. The court *sua sponte* dismissed Washington's deliberate indifference claim, finding that he had at most raised issues of medical malpractice. *Id.*, at *3. Similarly, here, although Yvonne alleges she did not get her blood pressure medication as quickly as she desired, her own allegations belie a claim that the officers acted with "deliberate indifference" because they (1) took steps to obtain her medications – both by contacting her daughter and by driving to her house when her daughter was unable to deliver the medications to the station – and (2) obtained emergency medical treatment for her by contacting the EMT and then obliging her request to see a physician in the ER. As such, the Court should grant the Dearborn Heights Defendants' motion for judgment on the pleadings on Yvonne's deliberate indifference claim.

Likewise, the Court should dismiss Yvonne Foster's Eighth Amendment claims against the Taylor Police Department. The allegations regarding this custody are similar to the ones regarding Yvonne's other custodies. (ECF No. 15, PageID.218-19.) According to Yvonne's amended complaint, immediately upon arrival at the Taylor Jail on January 9, 2018, she "informed the booking officer that she had symptoms of high blood pressure & [sic] requested to have her blood

pressure checked & [sic] also informed the booking officer that she needed her blood pressure pill." (*Id*. at PageID.218.)  A few hours later, an EMT unit was called to check Yvonne's blood pressure.  (*Id*.)  According to her, it was 180/100, and the EMT took her to the ER.  (*Id*. at PageID.219.)  She was then treated and released.  (*Id*.)

Again, Yvonne's own allegations show only a brief time lapse between her complaint and her receipt of treatment.  This does not constitute cruel and unusual punishment.  *Washington*, 2020 WL 833267, at *3.  As such, Yvonne's deliberate indifference claim against the Taylor Police Department staff should be dismissed pursuant to 12 U.S.C. § 1915(e)(2).

### c.      *Fifth Amendment Right to Remain Silent*

Yvonne Foster alleges that Sergeant John Keller "verbally assaulted" her for asserting her Fifth Amendment Right to remain silent.  (ECF No. 15, PageID.214.)  This does not state a claim for relief.

The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, requires that "[n]o person . . . shall be compelled *in any criminal case* to be a witness against himself." *See* U.S. Const., Amdt. 5 (emphases added).  Foster has not plead any facts showing she was compelled to be a witness against herself in a criminal case.  (ECF No. 15.)  At most, she claims that she "provided booking information & biometric information," but she never asserts that any of that information prejudiced her in any way.  As such, her Fifth Amendment claim should be dismissed.

### d.      *Due Process Claims under the Fifth and Fourteenth Amendment*

As the Dearborn Heights Defendants point out, Yvonne Foster vaguely alleges that various defendants violated her "due process" rights.  (ECF No. 15, PageID.207, 209, 226, 229, 236.)

To the extent Yvonne asserts a procedural due process claim for deprivation of her

"personal liberty," she must allege that she was not provided adequate due process.  *See Warren v. City of Athens*, 411 F.3d 697, 707-08 (6th Cir. 2005).  Due process requires that prior to the termination of a protected interest, the state must give notice and an opportunity for a hearing.  *See id*.  With regard to the three instances when Yvonne was in custody, her own amended complaint shows that she received notice in the form of citations and warrants, and the opportunity to be heard in the form of scheduled court hearings.  (ECF No. 15.)  Thus, this aspect of her due process claims fail.

To the extent Yvonne alleges a substantive due process claim for her allegations against Defendant Catherine O'Meara, her claims also fail.  Although it is difficult to tell, it seems Yvonne alleges that, as a court-appointed defense attorney, O'Meara violated her liberty interest through her alleged ineffective assistance of counsel.  (ECF No. 15, PageID.225-40.)  The Fourteenth Amendment's Due Process clause "protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action."  *See Sutton v. Cleveland Bd. of Ed.*, 958 F.2d 1339, 1350 (6th Cir. 1990).  An "arbitrary and capricious action is one that shocks the conscience."  *See Bowers v. City of Flint,* 325 F3d 758, 763 (6th Cir. 2003).

Yvonne has not pled any facts whatsoever that shock the conscience regarding Defendant O'Meara's representation.  (ECF No. 15, PageID.225-40.)  At most, Yvonne has pled that she did not like O'Meara's demeanor and disagreed with her defense strategy.  Specifically, she states, "O'Meara's demeanor was standoffish and unpleasant."  (*See id*. at PageID.225.)  She also complains that O'Meara only spent five minutes with her prior to her probable cause conference, and that she disagreed with the substance of O'Meara's advice.  (*See id*.)  None of these constitute grounds for a due process claim as none of them contain facts that "shock the conscience."

Indeed, Yvonne's own amended complaint shows that when she e-mailed O'Meara about

her case, O'Meara provided prompt responses grounded in practical legal advice.  (ECF No. 15, PageID.226-36.)  For example, Yvonne admits that O'Meara e-mailed her on February 6, 2018, stating:  "I will conduct your defense using my experience and knowledge of the law, researching what I feel is necessary."  (*See id*. at PageID.231.)  As such, this claim should be summarily dismissed pursuant to U.S.C. § 1915(e)(2).

e.    <i>Habeas Corpus</i>

Yvonne Foster alleges that Defendant Christian Holder denied her "the opportunity to write a habeas corpus upon arrest" by denying her a pencil and paper.  (ECF No. 15, PageID.214.)  She also claims the same regarding a booking officer from the City of Taylor.  (*Id*. at PageID.218.)

A prisoner's right to file a complaint for habeas corpus relief under Michigan Law is guaranteed by the Michigan Constitution of 1963.  *See Moses v. Dep't of Corrections*, 274 Mich. App. 481, 484 (2007) (*citing* Const. 1963, art 1, 12).  "The function of a writ of habeas corpus is to test the legality of the detention of any person restrained of his liberty."  *See Triplett v. Deputy Warden*, 142 Mich. App. 774, 780 (1985).  The writ of habeas corpus deals with *radical defects* that render a judgment or proceeding absolutely void.  *See Moses, supra* at 486 (emphasis added). A radical defect in jurisdiction requires "an act or omission by state authorities that clearly contravenes an express legal requirement in existence at the time of the act or omission."  *Id*. at 486 (quotations and citation omitted).

The denial of a pencil and paper upon arrest is not a "radical defect" that would render any of the proceedings or judgments against her absolutely void.  As such, this claim should be dismissed.

5.    <i>Plaintiffs Fail to State a Claim for Civil Conspiracy</i>

Plaintiffs allege a vast "conspiracy" among cities, police officers, judges, and attorneys

36

across Southeast Michigan to contravene their constitutional rights.  (ECF No. 15.)  This claim lacks legal merit and should be dismissed.

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action."  *See Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985).  Thus, to state a claim for civil conspiracy under § 1983, the plaintiff must proffer facts showing that there was an agreement between two or more people to violate her constitutional rights, that there was a single plan, and that the alleged co-conspirators shared in the general conspiratorial objective.  *Id.*  Plaintiffs' "conspiracy" claim fails for multiple reasons.  First, a plaintiff cannot succeed on a conspiracy claim under § 1983 where there is no underlying constitutional violation.  *See Wiley v. Oberlin Police Dept.*, 330 Fed. Appx. 524, 530 (6th Cir. 2009).  Here, for the reasons discussed above, no underlying constitutional violation exists.

Second, "it is 'well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim.'"  *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).  "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim or withstand a motion for summary judgment."  *Hartsfield v. Mayer*, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996) (citations omitted).  Here, Plaintiffs failed to plead any facts showing an express agreement between Defendants.  Accordingly, this claim should be dismissed against all Defendants.

6.      *Plaintiffs Fail to State a Claim for Assault and Battery*

Plaintiffs allege assault and battery against Officers Paralexis, Derwick and Minard.  (ECF No. 15, PageID.214-224.)  However, the reasonable use of force necessary to accomplish an arrest does not constitute assault and battery.  *See Smith v. Michigan*, 122 Mich. App. 340, 344-46 (1983)

("If a police officer lawfully arrests an individual, he may use reasonable force if that individual resists."). The Court has already explained above that Plaintiffs' excessive force claims against Officers Paralexis, Derwick and Minard should be dismissed because Plaintiffs' own allegations make clear that the officers' use of force was reasonable (and, in the case of Officer Derwick, non-existent[16]). As such, the Dearborn Heights Defendants' motion as to this claim should be granted and the claims against Officer Minard should be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

7.      *Plaintiffs Fail to State a Claim for Defamation*

Yvonne Foster seems to allege a defamation claim against Officers Paralexis and Derwick. (ECF No. 15, PageID.216.) She states, that the officers "Defamed with Malice." (*See id.*) She claims damages to her "reputation, affecting her ability to maintain, obtain employment, and obtain and be approved for housing, credit and other events that require a background check." (*See id.*)

As the Dearborn Heights Defendants point out, in order to state a cause of action for defamation, Foster must plead:

> (1) a false defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication.

*See Ghanam v. Does*, 303 Mich. App. 522, 544 (2014).

Yvonne does not identify any false or defamatory statement made by Officers Paralexis or Derwick. She seems to argue that her record of arrest, itself, is the defamatory statement.

---

[16] The amended complaint contains no facts supporting any assault by Officer Derwick. Instead, Taesha Foster alleges, in the most conclusory terms, "Taesha Keonna Foster was assaulted by Officer Derwick Gene Derwick." (ECF No. 15, PageID.212.) This type of pleading fails to state a claim for relief. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Moreover, the Court notes that Officer Derwick's report does not indicate any touching occurred, but instead indicates that he merely asked Taesha to move to the sidewalk. (ECF No. 71-1, PageID.907-08.)

However, the record of her arrests are not false statements; on the contrary, they are truthful statements, as Yvonne admits she was, in fact, arrested.  In addition, Officers Paralexis and Derwick did not engage in an unprivileged communication to a third party.  To the extent that Yvonne is applying for work or housing, she submits herself to background checks.  Therefore, Yvonne's defamation claim should be dismissed.

## II.     RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that the moving Defendants' motions (**ECF No. 31, 44, 49, 50, 53, 69, 71**) be **GRANTED**, that the claims against the non-moving Defendants be **DISMISSED**, and that this case be **DISMISSED**.


Dated: March 23, 2020                              s/David R. Grand
Ann Arbor, Michigan                                DAVID R. GRAND
                                                   United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may

respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

Dated:  March 23, 2020